UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff, | Case No. 1:17-cr-230<br><br>Hon. JANET T. NEFF<br>U.S. DISTRICT JUDGE |
| -v- | |
| MICHAEL ANTHONY CLAYTON<br>        Defendant | |

| | |
|---|---|
| Davin M. Reust | Jolene J. Weiner-Vatter (P54840) |
| UNITED STATES ATTORNEY'S OFFICE | LAW OFFICE OF JOLENE J. WEINER-VATTER |
| Attorney for Plaintiff | Attorney for Defendant |
| 330 Ionia, NW | 234 N. Division Avenue |
| P.O. Box 208 | Suite 400 |
| Grand Rapids, Michigan  49501 | Grand Rapids, Michigan  49503 |
| (616) 456-2404 | (616) 451-4446 |

**DEFENDANT'S SENTENCING MEMORANDUM**

This Sentencing Memorandum is submitted on behalf of Michael Clayton for the purpose of sentencing scheduled to take place on or about Monday, October 22, 2018, at 11:00 a.m. in front of the Honorable Janet T. Neff, United States District Judge.

On December 6, 2017, a superseding indictment was filed against Defendant Michael Clayton.   The superseding indictment charged Defendant Clayton with: count 1, Conspiracy to Sexually Exploit a Minor, in violation of 18 U.S.C. 2251(a), (e); count 3, Sexual Exploitation of a Minor, in violation of 18 U.S.C. 2251(a), (e); count 4, Sexual Exploitation of a Minor, in violation of 18 U.S.C. 2251(a), (e); count 5, Sexual Exploitation of a Minor, in violation of 18 U.S.C. 2251(a), (e); count 6, Sex Trafficking of a Minor, in violation of 18 U.S.C. 1591(a)(1), (b)(2), (c), and 18 U.S.C. 2; count 7,

Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. 846, 21 U.S.C. 841(1)(1), (b)(1)(C); and count 8, Felon in Possession of a Firearm, in violation of 18 U.S.C. 922(g)(1), 18 U.S.C. 924(a)(2), and 18 U.S.C. 921(a).

The Defendant Clayton was found guilty of all counts after a jury trial.


### PRESENTENCE INVESTIGATION REPORT UNRESOLVED OBJECTION

Defendant Clayton's Presentence Report correctly identifies Defendant's current objections.

**OBJECTION 1**: Defendant Clayton believes that the Presentence Report does not accurately reflect the "whole" story, nor the actions and behaviors other individuals played.


**OBJECTION 2**: Defendant Clayton objects to the additional levels for Obstruction of Justice.

First, it is unclear how Defendant's son saying, "I love you daddy" obstructed or impeded the administration of justice AND how that conduct was related to Defendant's offense of conviction.  USSG §3C1.1.  Further, Defendant's son saying, "I love you daddy" clearly is not threatening or intimidating.

Second, there is no proof or evidence that Defendant's son stating, "I love you daddy" had any effect what-so-ever on any juror's decision.  Further, "sympathy tactics" are often used by the Government, attorneys, witnesses, and investigators throughout cases and trials.

**OBJECTION 3:** Defendant Clayton objects to the application of USSG §2G1.3(b)(3), as Defendant Clayton did not use any electronic devise for this purpose. It was Defendant Hernandez that used a cellular telephone to arrange sex trafficking of a minor. Defendant Clayton never responded to Defendant Hernandez regarding this message or its content by use of any electronic device.

**OBJECTION 4**: Defendant Clayton objects to the application of USSG §2D1.1(b)(2), the use of a firearm for purposes of threats. In support of Defendant Clayton's objection, Defendant Clayton states that firearms were located in the ceiling in a bedroom and not near or with Defendant Clayton when the police raided the home.

Further, Defendant Clayton wishes to refer this Honorable Court back to Defendant Hernandez's sentencing memo, (Sentencing Memorandum, ECF 181, Page ID#991, line 24-25: "Mr. Hernandez was not present when his codefendant threatened HK or JP with the firearm. (PSR ¶ 32)" which is in direct conflict with information provided by United States Probation Officer Anna Pakiela.

**OBJECTION 5**: Defendant objects to the five point enhancement to the multiple count adjustment offense level and argues that the five point enhancement should only apply to the grouped offense level that includes a "covered sex crime". USSG §4B1.5(b) specifically refers to "any case in which the defendant's instant offense of conviction **IS** a covered sex crime". It does not state "include" a covered sex crime.

Likewise application note (2) of USSG §41B.5 states "for purposes of this guideline, the instant offense of conviction must be **A** covered sex crime."

## SENTENCING MEMORANDUM

Under 18 U.S.C. 3553(a) the Court must impose a sentence sufficient, but not greater than necessary, to accomplish the purpose of sentencing.  Those purposes are set forth in 18 U.S.C. 3553(a).  Even when a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the §3553(a) sentencing factors.  (*See United States v. Cavera*, 550 F.3d 180, 189 (2nd Cir. 2008)). And although the District Court must consider the applicable Guidelines and accompanying policy statements, the "district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views" embodied in the applicable Guidelines.  (*Kimbrough v. United States*, 552 U.S. 85, 101 (2007)).

1.  *The nature and circumstances of the offense, and the history and characteristics of the defendant.*

Defendant Clayton was raised by his mother in an abusive household surrounded by poverty.  His mother would often use extension cords, and other items to inflict corporal punishment on Defendant Clayton.  Her boyfriends, likewise would lash out and physical assault Defendant Clayton as a child.  United States Probation Officer Anna

Pakiela confirmed one such boyfriend, Mr. Kasib Mumin, who it was determined has an extensive criminal record.  Defendant Clayton has no memory of his father's involvement in his life, other than how he was murdered: shot 64 times.  He believes his father was killed because "he wished him dead."   Defendant Clayton had and has no real genuine role models.

Defendant Clayton has struggled with emotional regulation and mental illness for his entire life.  He has been diagnosed with bipolar disorder, not otherwise specified; schizophrenia, paranoid type; and attention-deficit/hyperactivity disorder, not otherwise specified. Throughout his childhood education he was involved in an Individual Education Plan, placed on medication, and received mental health services.

As an adult Defendant Clayton refused to take prescribed medication for his mental illness, claiming it left him unable to function or "zombie" like.  As a result, Defendant Clayton often presents as loud, with extreme mood swings, and verbal outburst.

Defendant Clayton's own substance abuse issues are what has driven him for years, whether considered self-medicating or not, leading to a series of poor choices and life altering consequences.  Defendant Clayton has never received substance abuse counseling; but, clearly Defendant Clayton's substance abuse use has significantly interfered with his personal relationships, his relationship with his son, his ability to maintain his acting career, and his ability to make good decisions.

Regarding the instant offense, it is not understood how, with the number of individuals who were involved, they all claimed to be "following" Mr. Clayton's lead – a man with tremendous mental health needs.  The co-defendant, and co-conspirators, and

others involved (non-victims), were all adults.  All these individuals all possessed some

sort of prior criminal history and ongoing substance use.  However, of significant

importance is that they admit that after law enforcement was called on this instant

offense, they all got together without Mr. Clayton, to discuss "the story."

 

     *2. The need for the sentence imposed.*

          *(A) To reflect the seriousness of the offense, promote respect for the law,*

          *and to provide just punishment of the offense…*

Defendant Clayton understands the seriousness of the offenses.  Further,

Defendant Clayton understands punishment.  However, Defendant Clayton feels singled

out, as does his family: that others involved in the instant offense are not being held

responsible for their part, their decisions, or their behavior.

 

          *(B) Deterrence*

Any sentence will significantly deter Defendant Clayton, specifically if it likewise

addresses Defendant Clayton's mental health needs, substance abuse issues, and

vocational possibilities.

 

          *(C) Protection of the Public*

Clearly Defendant Clayton feels love, as shown by the love he holds for his son.

This is a redeeming factor.  Therefore, it is not believed that Defendant Clayton needs to

be incarcerated for life to protect the public.   Rather, it is believed that if Defendant

Clayton was provided mental health, substance abuse, and vocational programming, that would in turn make Defendant Clayton whole and the public safe.

> *(D) To provide the defendant with the needed rehabilitative treatment in an effective manner.*

It is believed that Defendant Clayton could benefit from mental health, substance abuse, and vocational programming.

*3. The kinds of sentences available.*

Defendant Clayton understands that his current guidelines as scored, and the recommendation by United States Probation Officer Peakiela, recommend a life sentence. However, Defendant Clayton believes that he has talents and potential to give back to society.

*4. The sense of the legislature as expressed by the Sentencing Commission.*
  Doesn't apply.

*5. Any other policy statement.*

Defendant Clayton would respectfully request this Honorable Court consider a variance based on childhood abuse and poverty, and mental health disability.

*6. Unwarranted disparities.*

This is an unusual case.   All three victims have had some contact with the juvenile justice system.  Two of the three juveniles had previously experimented with illegal substances.  One of the juvenile victims listed herself as nineteen years of age and employed as a "stripper" on Facebook.  Another of the juveniles texted an offer to have sex for money to Defendant Clayton.  All three victims voluntarily came and went without the assistance of Defendant Clayton.  All three victims voluntarily made and had contact with Defendant Clayton over time without prompting.  Defendant Clayton was neither a parent or family member to the juveniles.


   *7.  Restitution.*

Defendant Clayton has no assets, and will have no means to repay any fine, cost, or restitution.


### CONCLUSION

Defendant Clayton respectfully requests that this Honorable Court consider all the aforementioned factors in determining an appropriate sentence for this offender and this offense.


Dated:  10/11/18

_____
Jolene J. Weiner-Vatter (P54840)
LAW OFFICES OF JOLENE J. WEINER-VATTER
Attorney for Defendant
234 N. Division Avenue, Ste 400
Grand Rapids, Michigan  49503
(616) 451-4446